J-S55044-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: M.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.C., NATURAL MOTHER | No. 776 WDA 2015 |

Appeal from the Order Entered April 16, 2015,
in the Court of Common Pleas of Allegheny County,
Orphans' Court, at No(s): TPR 152-14

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:           **FILED SEPTEMBER 04, 2015**

M.C. (Mother) appeals from the order entered April 16, 2015, in the Court of Common Pleas of Allegheny County, which terminated involuntarily her parental rights to her minor daughter, M.M. (Child).[1]  We affirm.

Child was born in February of 2013 and was removed from Mother's care immediately upon being discharged from the hospital.  Child was removed as a result of Mother's pending criminal charges, and because Mother was unable to return with Child to the homeless shelter where she resided.  In addition, Mother was not addressing her medical and mental health needs consistently.  Child was adjudicated dependent by order dated March 20, 2013.

---

* Retired Senior Judge assigned to the Superior Court.

[1] The parental rights of Child's putative father, R.M., as well as the parental rights of any unknown father that Child may have, were terminated by separate orders entered that same day.  Neither R.M. nor any unknown father is a party to the instant appeal.

On September 2, 2014, the Allegheny County Office of Children, Youth and Families (CYF) filed a petition to terminate involuntarily Mother's parental rights to Child. A termination hearing was held on January 16, 2015. On April 16, 2015, the orphans' court entered its decree terminating Mother's parental rights. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Mother presents one question for our consideration, namely, "Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that termination of [Mother's] parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S. §[]2511(b)?" Mother's Brief at 5.

We consider Mother's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to subsections 2511(a)(2), (5), (8), and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).

Instantly, Mother concedes that CYF presented clear and convincing evidence that her parental rights should be terminated pursuant to Section

2511(a). Mother's Brief at 9. Thus, we need only consider whether the court abused its discretion by terminating Mother's parental rights pursuant to subection 2511(b). We have discussed our analysis under subection 2511(b) as follows.

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, the orphans' court concluded that termination of Mother's parental rights would best serve Child's needs and welfare. Findings of Fact, Conclusions of Law and Order of Court, 4/20/2015, at 6, 9 (unnumbered pages). The court reasoned that Child has no bond with Mother, that Child would not suffer a detriment if Mother's parental rights were terminated, and that termination would allow Child "to pursue a direction of permanency and quality of life the child deserves." *Id.* at 5-6, 9.

Mother argues that the court failed to analyze the impact that terminating her parental rights would have on Child. Mother's Brief at 12-

13. According to Mother, the orphans' court "made no findings in regard to what effect termination of [Mother's] parental rights would have on the Child but merely concluded that such termination 'would not be detrimental.'" *Id.* at 12 (citation omitted).

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Mother's parental rights to Child. During the termination hearing, Psychologist Neil Rosenblum testified that he performed an interactional evaluation of Child and her foster parents, as well as an interactional evaluation of Child and Mother, and an individual evaluation of Mother. N.T., 1/16/2015, at 51. When asked whether Child has "an attachment to [M]other that we should be concerned about if [Mother's] rights would be terminated[,]" Dr. Rosenblum opined that Child's relationship with Mother "is familiarity and recognition but not an attachment." *Id.* at 61. Dr. Rosenblum explained that "there would not be any likelihood, not even any potential, for what we would call a meaningful attachment based on the fact that [Child has] never lived with her mother and [M]other has never had anything close to a level of responsibility for caring for her daughter beyond the visitation." *Id.* at 61. In contrast, Dr. Rosenblum observed that Child has "a very strong primary bond" with her foster parents. *Id.* at 53.

Dr. Rosenblum further testified that it was clear during his evaluation of Mother that she "continues … to suffer from delusional disorder."[2] *Id.* at 55. Dr. Rosenblum noted, *inter alia*, that Mother "was at times very illogical in her thinking" and "spoke increasingly about conspiracies …." *Id.* Dr. Rosenblum agreed that Mother's current mental health renders her incapable of parenting Child and ensuring Child's safety and that Mother would need to "achieve mental health stability over an extended period of time" in order for him to conclude otherwise. *Id.* at 57-59. Dr. Rosenblum also agreed that medication is essential to treating Mother's mental health and that there is "zero probability of [M]other being able to function effectively in a rational manner without medication." *Id.* at 60.

Barbara Moore testified that she was the CYF casework supervisor in this matter from February 27, 2013, until September 16, 2014. *Id.* at 5. Ms. Moore explained that Mother suffers from sickle cell disease and that Mother appeared to be "very inconsistent" in addressing her medical needs during Ms. Moore's time on the case. *Id.* at 7, 14. In addition, Mother was inconsistent in addressing her mental health needs, and refused to take medication. *Id.* at 15, 20. Mother alleged that "any medication would not work with her sickle cell" but failed to provide CYF with documentation supporting this claim. *Id.* at 16. Ms. Moore expressed concern that Child

---

[2] Mother reported to Dr. Rosenblum that she previously had been diagnosed with bipolar disorder and schizophrenia. N.T., 1/16/2015, at 54.

may not be safe in Mother's care as a result of her mental health issues. *Id.* at 17.

CYF caseworker Karl Lutz testified that he became the direct services caseworker assigned to Child's case on September 16, 2014, but that he had been working with Child's foster parents as an adoption caseworker since May of 2014. *Id.* at 34, 43-44. Mr. Lutz observed that Child is "very bonded" to her foster parents and that Child's foster parents do "a wonderful job" of caring for Child. *Id.* at 42. Mr. Lutz acknowledged that Mother has attended her visits with Child and that Mother was "appropriate" during the visits. *Id.* at 36. However, Mr. Lutz opined that Mother is not competent to parent Child. *Id.* at 47. Mr. Lutz observed, *inter alia*, that Mother suffers from delusions. *Id.* at 39. Mother reported to Mr. Lutz that she did not need medication to treat her mental health issues and that she would refuse to take medication. *Id.* at 38. Mother stated that she would not take medication because "it had an adverse effect on her well-being." *Id.*

Based upon this evidence, the orphans' court found that termination would not be detrimental to Child but instead would benefit Child by allowing her to achieve permanency. Indeed, the evidence presented during the termination hearing supports the court's conclusion. Thus, we reject Mother's argument that the orphans' court failed to consider the impact that terminating Mother's parental rights would have on Child.

Child has never lived with Mother and does not share a bond with her. Instead, Child is bonded with her foster parents. Mother also suffers from serious mental health issues which pose a potential safety risk to Child. Mother refuses to take medication necessary to treat these issues, and it is apparent that Mother will not be capable of caring for Child any time soon, if ever.

Accordingly, because we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Mother's parental rights to Child, we affirm the order of the orphans' court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2015